JOURNAL ENTRY AND OPINION
Appellant, Nelson Laracuente, is appealing his conviction for two counts of child endangering in case number 76025. Cross-appellant, the State of Ohio, is appealing the trial court's sentence of community control in case number 76047. For the following reasons, we affirm.
The victim in this case was the appellant's two-month-old daughter, Rachel. As a result of the injuries in question, Rachel has cerebral palsy and is a spastic quadripeligic.
Appellant's wife, Rebecca Laracuente, testified that on November 22, 1996, she took her four-year-old son to church. Rebecca was gone from 7:30 p.m. to 10:00 p.m. Her husband was alone with Rachel. When she left, her neighbor was at the door. When she came home from church, Rachel looked pale. Around 10:30 p.m., Rachel began projectile vomiting. Rebecca took Rachel to see Dr. Saridakis the next morning. He recommend that Rachel be taken to the hospital to get an IV, as she appeared dehydrated. Rachel was taken to the Cleveland Clinic.
Rebecca further testified that Rachel was released from the Clinic on November 25. On November 26, the family went to Dr. Saridakis' office to pick up a prescription for Rachel. Sometime after 7:30 p.m., Rachel threw up. Around 10:15 p.m., Rebecca went to Revco for fifteen to thirty minutes. When Rebecca returned home, Rachel was pale and gasping. The paramedics were called and Rachel was taken to the hospital.
Dr. Michael Saridakis testified that when he saw Rachel on November 23, the fontanel was sunken, indicating dehydration. It was not bulging, which would indicate swelling inside the head. He diagnosed Rachel as having gastroenteritis. On November 26, around 6:00 p.m., Rachel appeared fine. Her fontanel was flat.
Dr. Mark Luciano testified that he is a specialist in pediatric neurosurgery at the Cleveland Clinic. He examined Rachel and saw a CAT scan of Rachel's head, taken on November 27 at 2:30 a.m. He observed a subdural hematoma, which is fluid outside the brain underneath the skull. Dr. Luciano drilled holes into Rachel's skull to drain the fluid to relieve the pressure. The injury was not likely created in the last few hours. At its oldest, the injury could be a week or two weeks old. Rachel had retinal hemorrhages, which are frequently seen with shaken baby syndrome. Rachel also had a newer injury in the hemisphere of the brain. This newer injury was most likely caused by trauma, but the doctor could not be certain it was not a spontaneous hemorrhage. To a medical degree of certainty, the injuries resulted from an impact or compression of the head.
Dr. Paul Ruggieri, a neuroradiologist at the Cleveland Clinic, testified that he observed Rachel's CAT scan. The types, number and location of hemorrhages in conjunction with the swelling of the brain was most likely caused by "shaken baby syndrome."
On cross-examination, Dr. Ruggieri answered "yes" to the question whether the acute hemorrhages were more than 24 hours old. Dr. Ruggieri clarified that he meant the injury could have occurred during that day, one day or several days before. The doctor stated that the sub-acute hemorrhages would have occurred at least one week ago, on November 20. He later clarified his testimony to "approximately a week" and would not exclude the possibility the injury happened on November 22.
Dr. Stephen Davis, a specialist in pediatric intensive care, testified he saw Rachel at the Cleveland Clinic on November 27, 1996. Rachel had a loss of grey-white differentiation, indicating a significant force and twisting motion caused the injury. Rachel was tested for bleeding disorders and metabolism disorders, but the tests were negative. Because no one reported an accidental trauma, Dr. Davis concluded the injury was non-accidental.
Dr. James Besunder testified that he is director of pediatric intensive care at Akron Children's Hospital. He provided a second opinion. He concluded to a medical degree of certainty that the injuries resulted from shaken infant impact syndrome. To produce an injury of this type accidentally, the infant would be involved in a 60 m.p.h. car crash. The more recent injury could be a spontaneous hemorrhage, but that was highly unlikely. Dr. Simon, a neuroradiologist, estimated the subdural hematoma as greater than four days, but less than thirty days old.
Detective Roger Vaughan testified that when Rebecca first talked to him, she did not tell him about the neighbor coming over on November 22. She also told the Detective she warned appellant to be gentle with the baby. In court, Rebecca denied that she made this statement. When he interviewed appellant, appellant said he would play with the child with a shaking, twisting, bouncing motion, but it was very gentle. Despite reassurances that a great force was needed to cause the injuries, appellant continued to blame himself.
Appellant had numerous character witnesses come forward to say appellant was a peaceful, gentle person. He was never violent towards his son.
Brian Yantek, a social worker, testified that both parents were trying to provide the best care for the children. From his observations of appellant, he was not a person given toward child abuse.
Dr. Diane Butlar, a pediatrician, testified that Rachel was allergic to most formulas. Dr. Butlar changed Rachel's diet with good results, indicating a metabolic disorder. Rachel had a family history of vascular malformation, and other unusual diseases. Some tests indicated abnormal amino acids in her urine and blood, but they were not conclusive. Vomiting can be a sign of increased pressure in the brain. Rachel vomited before Rebecca went to the pharmacy, indicating that whatever caused the injuries happened before the mother went to the pharmacy. Dr. Butlar felt this was not a case of shaken baby syndrome. Butlar also stated that even bouncing an infant on one's knee in a playful way could cause the types of injury experienced by Rachel.
Adel Haj testified that he lived in the apartment next door to appellant. On November 22, 1996, appellant knocked on his door. Haj and appellant stood in the doorway and talked. They moved the conversation down the hall and in front of appellant's door. The door was cracked open. The men conversed until appellant's wife came home. Haj was not there when Rebecca left for church.
Jennifer Davis, Haj's girlfriend, testified that Haj was talking with appellant for over an hour.
Appellant testified that he was speaking with Adel Haj the entire time his wife was at church. He periodically peeked in to check on Rachel. He denied ever violently shaking or throwing Rachel. He did bounce Rachel on his knee in a gentle, playful manner. Appellant told the detective names of others who had been alone with Rachel.
The indictment was amended so that counts 1 and 3 had the dates of November 1 through November 22. Counts 2 and 4 had the date of November 26. Appellant's counsel did not renew the Crim.R. 29 motion. Appellant was acquitted of counts 1 and 2, felonious assault, and found guilty of counts 3 and 4, endangering children. After the verdict, appellant moved for acquittal, which was denied.
 I.
Appellant's first assignment of error states:
 APPELLANT LARACUENTE'S CONVICTION FOR CHILD ENDANGERING UNDER COUNT THREE(3) OF THE INDICTMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION WHERE THE PROSECUTION FAILED TO PRESENT EVIDENCE THAT THE APPELLANT INJURED RACHEL LARACUENTE PRIOR TO NOVEMBER 20, 1996.
When reviewing a challenge to the sufficiency of evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia (1979). 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 520, State v. Jenks (1991), 61 Ohio St.3d 259.
Appellant contends that all the experts agree that the first injury occurred before November 20, and there was no evidence appellant was alone with the child before November 20. The medical testimony indicates the injury may have occurred on November 22. Dr. Luciano testified that the injury was, at its oldest, a week to two weeks old. Dr. Ruggieri stated that the sub-acute hemorrhages would have occurred at least one week ago, on November 20. He later clarified his testimony to "approximately a week" and would not exclude the possibility the injury happened on November 22. Dr. Simon, a neuroradiologist, estimated the subdural hematoma as greater than four days, but less than thirty days old. A reasonable trier of fact could have found that the injury occurred on November 22.
While appellant testified that he was talking with his neighbor the entire time his wife was at church, the neighbor testified that he did not see Rebecca leave. The neighbor's testimony does not establish that appellant was with the neighbor the entire time. A reasonable trier of fact could find that appellant had the opportunity to inflict the injury on November 22.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE CONVICTION AGAINST NELSON LARACUENTE FOR ENDANGERING CHILDREN UNDER COUNT FOUR (4) OF THE INDICTMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THERE WAS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Appellant contends that the finding that appellant caused the second injury on November 26 was against the weight of the evidence. In determining if a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences., considers the credibility of witnesses and determines whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Martin (1983) 20 Ohio App.3d 172, citing Tibbs v. Florida (1982)457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. The court should consider whether the evidence is credible or incredible, reliable or unrealiable, certain or uncertain, conflicting, fragmentary; whether a witness was impeached; and whether a witness had an interest in testifying. State v. Mattison (1985), 23 Ohio App.3d 10. The credibility of a witness is primarily an issue for the trier of fact, who observed the witness in person. State v. Antill
(1964), 176 Ohio St. 61, State v. DeHass (1967), 10 Ohio St.2d 230.
Appellant asserts that Dr. Ruggieri's testimony that the injury was within the past day was not credible, because he previously stated the injury was greater than 24 hours old. Dr. Ruggieri corrected his testimony, and said the injury could have occurred in the past day. The trier of fact did not lose its way in determining this testimony was credible.
Appellant points out that the experts could not rule out the possibility that the second injury was a spontaneous hemorrhage. Also, appellant's expert concluded that the injuries were not caused by shaken baby syndrome. The prosecution experts testified that it was possible, but very unlikely the second injury was spontaneous. To a reasonable degree of medical certainty, they testified the second injury was caused by trauma. The jury did not lose its way in finding that the prosecution's experts were more credible than the defense expert.
Accordingly, this assignment of error is overruled.
 III. Appellant's third assignment of error states: APPELLANT LARACUENTE'S CONVICTION FOR ENDANGERING CHILDREN UNDER COUNT FOUR(4) OF THE INDICTMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, TO THE OHIO CONSTITUTION WHERE THE PROSECUTION FAILED TO PRESENT EXPERT EVIDENCE TO AN ACCEPTABLE DEGREE OF MEDICAL PROBABILITY AS TO WHEN THE SECOND INJURY OCCURRED.
Appellant contends the experts could not pinpoint the exact time of the injury, so the evidence was insufficient to show the injury occurred when appellant was alone with the child. The medical evidence established that the second injury occurred some time between November 25 and 1:30 a.m. on November 27. The medical evidence established the injuries could have occurred when appellant was alone with the child on November 26. There was no evidence that anyone else was alone with the child who could have inflicted the injuries. No one reported any possible accidental causes of injury. Based on all the evidence, a reasonable trier of fact could conclude beyond a reasonable doubt that appellant caused the injuries. See State v. Munici (Nov. 19, 1987), Cuyahoga App. No. 52579, unreported; State v. Gondek (Jan. 26, 2000), Medina App. No. 2928-M, unreported.
Accordingly, this assignment of error is overruled.
 IV. Appellant's fourth assignment of error states: NELSON LARACUENTE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10. OF THE OHIO CONSTITUTION WHEN HIS TRIAL COUNSEL ARGUABLY FAILED TO MAKE A MOTION FOR ACQUITTAL AT THE CLOSE OF THE APPELLANT'S CASE.
To demonstrate ineffective assistance of counsel, appellant must show (1) that counsel substantially violated an essential duty, and (2) appellant was prejudiced by counsel's errors.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674, State v. Bradley (1989), 42 Ohio St.3d 136. Appellant was not prejudiced by counsel's failure to renew the Crim.R. 29 motion, because, as discussed above, there was sufficient evidence from which the trier of fact could find appellant guilty on both counts.
Accordingly, this assignment of error is overruled.
 V. The State of Ohio's sole assignment of error states: THE TRIAL COURT ERRED BY IMPOSING A COMMUNITY CONTROL SANCTION, RATHER THAN A PRISON TERM, WHEN THERE IS AN INSUFFICIENT BASIS FOR OVERRIDING THE PRESUMPTION, IN FAVOR OF A PRISON TERM, FOR TWO (2) FELONIES OF THE SECOND DEGREE.
The offenses were second degree felonies, with a presumption of jail time. R.C. 2929.13 (D). The court may impose community control sanctions if it finds: (1) that the community control sanctions would adequately punish the offender and protect the public, because the factors of R.C. 2929.12 indicate a lesser likelihood of recidivism; and (2) the community control sanction would not demean the seriousness of the offense because the factors of R.C. 2929.12 indicate the conduct was less serious than that normally constituting the offense. R.C. 2929.13 (D). An appeals court may reverse a sentence if it finds by clear and convincing evidence that there was an insufficient basis for overriding the presumption in favor of a prison term, or the trial court did not comply with R.C. 2929.13 (D). R.C. 2953.08 (G)(1)(c); State v. Assad
(June 11, 1998), Cuyahoga App. No. 72648, 72649, unreported; Statev. Stribling (Dec. 10, 1998), Cuyahoga App. No. 74715, unreported.
The facts indicated that appellant was unlikely to commit future crimes. Appellant had no prior criminal record. A psychological evaluation of appellant did not manifest any symptoms of a disorder which would place him at risk for abusing his daughter. While appellant continued to deny he committed the offense, he was doing everything possible to improve his daughter's condition. Rachel made unexpected improvements, due to the care of both parents. The trial court considered that no further abuse occurred and no abuse occurred to the other child.
The conduct was more serious because the injury was worsened because of the age of the victim; serious physical harm resulted and appellant's relationship with the victim facilitated the offense. R.C. 2929.12 (B). The conduct was less serious because, although he recklessly disregarded a known risk, appellant did not expect to cause physical harm to Rachel. See R.C. 2929.12 (C) (3). See, generally, State v. Adam (1980), 62 Ohio St.2d 151 (child endangering requires mental state of recklessness). We cannot find by clear and convincing evidence that there was an insufficient basis to find that the conduct was less serious than that normally constituting the offense.
The court also considered that the child would be better off with the care of both parents. We can not say that there was clear and convincing evidence the trial court should not have overridden the presumption in favor of prison time.
Accordingly, this assignment of error is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER. J., and TIMOTHY E. McMONAGLE, J., CONCURSIN JUDGMENT ONLY.
 ______________________________ ANN DYKE, ADMINISTRATIVE JUDGE